#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK WAYNE CASTLEMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 22-CV-235-RAW-JAR |
| JOHN MARLER, et al., | ) ) ) |
| Defendants. | ) ) |

### OPINION AND ORDER

Plaintiff is a pro se state prisoner in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma. On August 19, 2022, he filed this amended civil rights complaint pursuant to 42 U.S.C. § 1983, seeking relief for alleged constitutional violations at OSP (Dkt. 9). The defendants are the following OSP officials: John Marler, D.O., Physician, a.k.a. John Marlar, D.O.; Donna Arnold, R.N.; Regina Van Blaricom, OSP Correctional Health Service Administrator; Lt. Daniel Christenson, a.k.a. Daniel Christensen, Correctional Officer; and Lt. Mark McManus, Correctional Officer. *Id*. at 3-4. The Court has before it for consideration Plaintiff's amended complaint (Dkt. 9), a special report prepared by DOC officials at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 26), Defendants Christenson and McManus' motion to dismiss (Dkt. 29), and Plaintiff's response to the motion (Dkt. 36).

**Plaintiff's Allegations**

Plaintiff alleges in Claim 1 of the amended complaint that on June 7, 2020, he was stabbed four times by his cellmate, and Defendant Dr. Marler was notified of Plaintiff's severe injuries. Plaintiff contends that although Marler knew Plaintiff needed treatment that the prison could not provide, Marler gave an order to put Plaintiff in a medical holding cell, instead of sending him to a hospital, thereby putting Plaintiff's life at risk. *Id.* at 5.

In Claim 2, Plaintiff alleges Defendant Donna Arnold, R.N., knew the treatment she provided for his injuries was not working, and he needed a higher level of care. Arnold allegedly said that

Plaintiff had profuse, uncontrolled bleeding, suggesting the need for x-rays and further assessment, and a chest wound that penetrated his underlying organs. Despite Plaintiff's condition, Arnold chose not to transport him to a hospital immediately, instead putting him in holding cell where CPR was performed. Thereafter, Plaintiff was sent to the hospital. *Id.*

In Claim 3, Plaintiff alleges Defendant Lt. McManus failed to attempt to get better medical care for him, when it was obvious that the medical treatment at OSP was not working. *Id.* at 6.

Plaintiff complains in Claim 4 that Defendant Correctional Officer Christenson did not step up and say anything to try to get better medical treatment for Plaintiff after he was injured and bleeding excessively at OSP. *Id.*

In Claim 5, Plaintiff alleges Defendant Regina Van Blaricom, DOC Correctional Health Service Administrator, chose not to see that the medical staff gave proper medical treatment when he was injured. *Id*. at 9.

**Standard of Review**

Under Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed for failure to state a claim upon which relief can be granted "only when it appears that the plaintiff can prove no set of facts in support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quoting *Sutton v. Utah State School for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999)).

In assessing a motion to dismiss, the Court must accept the factual allegations as true and consider them in the light most favorable to the plaintiff. *Tomlinson v. El Paso Corp,*, 653 F.3d 1281, 1285-86 (10th Cir. 2011), *cert. denied*, 565 U.S. 1201 (2012) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A request for dismissal pursuant to Fed. R. Civ. P. 12(b)(6)

requires the court to determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is required to exercise a liberal interpretation of Plaintiff's pleadings, *Haines v. Kerner*, 404 U.S. 519 (1972), the Court need not assume the role of advocate for Plaintiff, and he must present more than conclusory allegations to survive a motion to dismiss for failure to state a claim, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id.* (citing cases). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id*.

**Statute of Limitations**

Defendants Christenson and McManus have filed a motion to dismiss, alleging among other things that the complaint was filed after the statute of limitations had expired (Dkt. 29 at 4-5). "Federal law controls questions relating to accrual of federal causes of action. A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993) (citations omitted). *See also Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). In particular, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (citations and internal quotations omitted). *See also Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004), *cert. denied*, 544 U.S. 1044 (2005).

State law controls the determination of the statute of limitations and the application of tolling in a federal civil rights action. *Board of Regents of University of State of N. Y. v. Tomanio*, 446 U.S.

478, 485 (1980). The statute of limitations for a civil rights cause of action in Oklahoma is two years. *Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988), *abrogated on other grounds as recognized by Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013); Okla. Stat. tit. 12, § 95(A)(3). According to Plaintiff, the incidents giving rise to his claims occurred on June 7, 2020. His claims, therefore, were or should have been apparent on that date. Absent tolling, the limitation period for this action expired two years later on June 7, 2022. Plaintiff filed his original complaint on August 16, 2022 (Dkt. 1 at 8),[1] more than two months after his deadline had passed.

Oklahoma generally permits tolling of the limitation period in two limited circumstances. *Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004).

> The first circumstance is the existence of a legal disability, which has been applied in cases where a plaintiff's competency is impaired or where the plaintiff has not yet reached the age of majority. The second circumstance is when defendants engage in false, fraudulent or misleading conduct calculated to lull plaintiffs into sitting on their rights. This court noted also that in the appropriate case, exceptional circumstances may justify tolling a statute of limitations.

*Young v. Davis*, 554 F.3d 1254, 1258 (10th Cir. 2009) (quotations, alterations, and citations omitted). Oklahoma's exceptions to a statute of limitations "are strictly construed and are not enlarged on consideration of apparent hardship or inconvenience." *Resolution Trust Corp. v. Grant*, 901 P.2d 807, 813 (Okla. 1995) (footnote omitted).

Plaintiff alleges in his response to the motion to dismiss (Dkt. 36) that his complaint was timely, because he did not become aware that his Eighth Amendment rights had been violated until he received a copy of his medical reports on September 29, 2020. He claims it took numerous attempts over more than three months for him to receive his medical records, so his claim accrued on the date he received the reports.

---

[1] "An inmate who places a federal civil rights complaint in the prison's internal mail system will be treated as having 'filed' that complaint on the date it is given to prison authorities for mailing to the court." *Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005) (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988).

> In *Alexander v. Oklahoma*, the Tenth Circuit drew a distinction between a plaintiff's awareness of his physical injuries and his knowledge of a cause of action. *See id.* at 1215-16. While a plaintiff need not have conclusive evidence of the cause of the injury to trigger the statute of limitations, he must have sufficient facts to put a reasonable person on notice that wrongful conduct caused the harm. *Id.* at 1216. It is a plaintiff's responsibility to use "reasonable diligence" in seeking to discover those facts. *Id.*

*Garcia v. Chamjock*, No. 11-cv-263-PAB-MEH, 2012 WL 5354671, at *5 (D. Colo. Oct. 3, 2012) (unpublished).

After careful review, the Court agrees with Plaintiff that his action accrued on September 29, 2020, when he received his medical records concerning the stabbing. Therefore, Defendants Christenson and McManus' allegation that Plaintiff's action is time barred is denied.

**Exhaustion of Administrative Remedies**

Defendants Christenson and McManus also allege Plaintiff failed to exhaust the administrative remedies for his claims against them. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). He must properly complete all required steps of the grievance process to exhaust his administrative remedies. *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. Dec. 28, 2007).

To properly exhaust, the prisoner must comply "with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90. (2006). "Simply presenting a defective or non-complying grievance . . . does not constitute exhaustion of remedies." *Brewer v. Mullin*, 130 F. App'x 264, 265 (10th Cir. 2005). Prisoners must exhaust remedies, even if doing so seems futile.

*Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). A prisoner must timely exhaust every step of a prison system's grievance procedure in full compliance with the procedure's requirements; partial compliance is not sufficient. *Id.* Courts will only excuse failure to exhaust if prison officials impede the prisoner's attempts. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). The prisoner must complete the grievance process or there is no exhaustion of administrative remedies. *Id*. Defendants Christenson and McManus allege Plaintiff failed to complete the grievance process, and therefore Plaintiff has failed to exhaust his administrative remedies.

DOC Policy OP-090124, "Inmate/Offender Grievance Process," governs DOC offender complaints regarding incidences of prison life (Dkt. 26-19). It provides the multi-step exhaustion process an offender must satisfy before filing suit. *Id.* An offender first must attempt to informally resolve his complaint by talking with the appropriate staff member. OP-090124 (V). If unsuccessful, the offender must submit a Request to Staff (RTS) to the appropriate staff member. *Id.* The RTS must be submitted within seven days of the incident at issue. *Id*. at part (V)(A)(a)(2). The appropriate staff then responds in writing within ten days of the receipt of the RTS. *Id*. at (V)(b)(4).

If the offender's complaint remains unresolved, the offender may begin the formal grievance procedure by submitting a Grievance to the Reviewing Authority. *Id.* at part (VI). The Grievance must be received by the Reviewing Authority within 15 days from the date the offender received the response to the RTS. If the complaint concerns a medical issue, the offender must submit the Grievance to the facility Correctional Health Services Administrator (CHSA). *Id.* at part (VI)(B)(1). Grievances that are of an emergency or sensitive nature can be submitted directly to the Reviewing Authority without informal resolution. This is appropriate where the inmate faces a substantial risk of personal injury, sexual harm, or other irreparable harm. *Id*. at part (IX). If a grievance response fails to resolve the issue, the inmate then must appeal to the Administrative Review Authority (ARA), or if the complaint concerns a medical issue, to the DOC's Medical Administrative Review Authority (MARA). *Id*. at part (VIII)(B).

Defendants Christenson and McManus allege Plaintiff failed to timely submit his RTS. Plaintiff filed the RTS on October 6, 2020, complaining he was "not given proper medical care" after being stabbed by his cellmate on June 7, 2020 (Dkt. 26-15 ). This filing occurred four months after the stabbing incident, when the DOC required Plaintiff to file any RTS within seven days of the incident. See OP-090124(V). If, however, the Court considers the date the action accrued-- September 29, 2020--the RTS was timely filed. The Court notes that the RTS was not rejected as untimely (Dkt. 26-15), and Plaintiff was advised that the DOC would look into the incident (Dkt. 26-15 at 4).

Defendants Christenson and McManus, however, also assert Plaintiff failed to file a timely Grievance. After the DOC responded to Plaintiff's RTS on October 14, 2020, Plaintiff waited until March 26, 2021, to submit his Grievance (MARA 21-23) to the Medical ARA. This was nearly a year after the date of the medical incident (Dkt. 26-15 at 3).

Though dated March 26, 2021, Plaintiff's Grievance was not received by the MARA until April 5, 2021. *Id.* Plaintiff contends in the Grievance that he originally mailed the form to Defendant Van Blaricom on December 6, 2020, but received no response. *Id.* He then mailed an RTS on February 6, 2020, to remind her to respond to the Grievance. *Id.* He also stated in his March 26, 2021, Grievance that, following directions, he also sent two Grievances to OSP on November 11, 2020, and December 6, 2020. *Id.*

On May 5, 2021, the Medical Services Manager responded to the March 26, 2021, Grievance, stating that Plaintiff was out of time to submit this Grievance. *Id*. at 2. A Grievance must be received by the Reviewing Authority within 15 days of the date the response to the RTS was received *Id.* Here, Plaintiff received the response to his RTS on October 17, 2020, but Plaintiff's Grievance was not signed by him until March 26, 2019, and was not received by the MARA until April 5, 2021 (Doc. 26-15). The Court notes that even taking into account Plaintiff's claim that he submitted an earlier Grievance on November 11, 2020, Plaintiff was out of time to submit a grievance on his complaint for improper medical care.

Plaintiff argues in his response to the motion (Dkt. 36) to dismiss that he was not required to pursue a grievance, citing the following:

> An inmate who properly invokes the first stage of an inmate grievance process . . . and obtains available relief has exhausted his administrative remedies. *See e.g. Ross v. County of Bernalillo*, 365 F. 3d 1181, 1187 (10th Cir. 2004) (where prison facility responded to inmate's informal pre-grievance complaint about a dangerous condition and provided a remedy, inmate was not required to do more to exhaust administrative remedies as to that claim).

*Ray v. Jones*, No. CIV-06-319-C, 2007 WL 397084 (W.D. Okla. Feb. 1, 2007) (unpublished),

Plaintiff contends that he properly invoked the first stage of the grievance process and received the requested action in his RTS. He requested an investigation and preservation of video and voice recordings in the medical unit (Dkt. 26-15). Defendant Van Blaricom stated in her RTS response that the issue would be "looked into." *Id.* Therefore, Plaintiff apparently received his requested relief, as demonstrated in the records attached to the special report (Dkt. 26), and he was not required to continue in the administrative remedies process. Consequently, Defendants Christenson and McManus' motion to dismiss for failure to exhaust administrative remedies is denied.

**Eighth Amendment Claim**

Plaintiff alleges in Claim 3 of the amended complaint that Defendant McManus failed to attempt to get better medical care for him after the stabbing, when it was obvious that the medical treatment at OSP was not working (Dkt. 9 at 6). In Claim 4, Plaintiff complains that Defendant Christenson did not step up and say anything to try to get better medical treatment for Plaintiff after he was injured and bleeding excessively at OSP. *Id.*

Defendants McManus and Christenson allege in their motion to dismiss that they did not violate Plaintiff's Eighth Amendment rights. The Supreme Court has addressed the Eighth Amendment prohibition against cruel and unusual punishment in the context of medical attention:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access

to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983. (Citations and footnotes omitted).

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

"Deliberate indifference" involves both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 298-99 (1991). The prisoner must first produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.

According to the Incident Notification Report in the special report, completed by OSP Warden Tommy Sharp,

> On June 7, 2020, at approximately 9:45 p.m., Officer Daniel Christensen was conducting a unit check on Unit A, Quad 2. When Officer Christensen arrived at cell 21 that houses Inmate Castleman Mark 266209 and [redacted], he saw inmate Castleman lying on his bunk and appeared to be in medical distress. Officer Christensen radioed for assistance. Officers Jameson Rich, Timothy Matthew, Matthew Scoggins, Sergeants Kevin Fant, Justin Jordan, Michah Hamel and Lieutenants Denver Dobson and Mark McManus responded to the incident. . . .
>
> Upon entering the cell Officers found that Inmate Castleman had been stabbed at least 3 times. Notification was made to the Captain's office. Inmate Castleman was escorted in a wheelchair to the institutional Health Care Center (IHCC) for examination by Officers Christensen and Rich while Lieutenant Dobson operated the hand held camera. . . .
>
> Inmate Castleman was found to have 3 puncture wounds. One to the outside of his left leg just above the knee, one to the left forearm and one on his back on the left side about midway up his rib cage. Inmate Castleman was also found to have a burn mark on the left side of his abdomen that he told nursing staff had happened approximately a week ago.
>
> Inmate Castleman was transported by ambulance to McAlester Regional Health Center (MRHC) . . . due to becoming incoherent and having trouble breathing. Inmate Castleman was admitted into MRHC for a collapsed lung.

(Dkt. 26-4 at 4).

On July 20, 2020, Plaintiff was transferred to Joseph Harp Correctional Center for mental health treatment. He was transferred back to OSP maximum security on December 14, 2021 (Dkts. 26-17, 26-18).

Plaintiff's amended complaint presents no facts to demonstrate how Defendants Christenson

9

or McManus' responses to his injuries constituted deliberate indifference. Instead, Plaintiff alleges only that both defendants failed to step up and say something to try to obtain better medical help for him (Dkt. 9 at 6). He alleges no facts showing how these two defendants delayed his medical care or intentionally violated his constitutional right to medical care. There is no indication in the relevant medical records that he was denied treatment for his stab wounds (Dkts. 26-4, 26-5, 26-6).

Plaintiff complains in his response to the motion to dismiss that it took 120 minutes for him to be transferred to the hospital, and there was a 20-minute delay because it was count time and the staff wanted to change his cuffs (Dkt. 26 at 8-9). He does not allege any delays were caused by Defendants Christenson or McManus. *Id.*

Plaintiff then was transferred to the emergency room at McAlester Regional Health Center. To the extent Plaintiff is complaining of a delay in his transfer to the hospital, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). Plaintiff has not made this showing.

After careful review of the record, the Court finds Plaintiff has not shown that Defendants Christensen or McManus were deliberately indifferent to his serious medical needs. Therefore, Defendants Christensen and McManus' motion to dismiss Plaintiff's Eighth Amendment claim is GRANTED.

**ACCORDINGLY,**

1.    Defendants Christenson and McManus' motion to dismiss (Dkt. 29) is DENIED with respect to the statute of limitations.

2.    Defendants Christenson and McManus' motion to dismiss (Dkt. 29) is DENIED with respect to Plaintiff's alleged failure to exhaust administrative remedies.

3.    Defendants Christenson and McManus' motion to dismiss Plaintiff's Eighth Amendment claim (Dkt. 29) is GRANTED for Plaintiff's failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and Christenson and McManus are DISMISSED

from this action.

    **IT IS SO ORDERED** this 7th day of July 2023.

                                              Ronald A. White
                                              United States District Judge
                                              Eastern District of Oklahoma